IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JACOB R. PRATT,

        Plaintiff,

    v.                                    Civ. No. 18-524 MV/KK

GERMAN FRANCO, *et al.*,

        Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on NMCD Defendants' Motion for Summary Judgment Based on the *Martinez* Report (Doc. 46) ("Motion"), filed May 7, 2021. The Court FINDS that Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act as to the religious discrimination claims in Count I of his Amended Complaint, and as to Counts II and III of his Amended Complaint in their entirety. As such, the Court recommends that Defendants' Motion be GRANTED IN PART and that these unexhausted claims be dismissed without prejudice. The Court further FINDS that Plaintiff has not asserted certain administratively exhausted claims on which Defendants moved for summary judgment in his Amended Complaint, and as such, those claims are not properly before the Court. The Court therefore recommends that the portions of Defendants' Motion concerning unasserted administratively exhausted claims be DENIED AS MOOT.[2]

---

[1] By an Order of Reference (Doc. 5), filed June 15, 2021, this matter was referred to me to conduct hearings if warranted and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

[2] Defendants have also moved for summary judgment on Plaintiff's exhausted claims in Count I of his Amended Complaint alleging that (1) the overview of the Asatru/Odinism religion included in NMCD's Religious Programs Policy CD-101300 was "erroneous" and didn't "allow for basic ritual items, the growing of a beard, specific holy days, or ritual practices," and (2) Defendants failed to provide an approved vendor for Asatru religious items, in

## I. BACKGROUND

Plaintiff Jacob R. Pratt, a *pro se* state prisoner, is an adherent of Odinism, a Pagan religion that he also refers to as Asatru and Heathenry. (Doc. 19 at 4.) On December 13, 2016, Plaintiff was received into the custody of the New Mexico Corrections Department ("NMCD") and on February 6, 2017, he was transferred to the Northeastern New Mexico Correctional Facility ("NENMCF"). (Doc. 35-3 ¶ 18; Doc. 35-4.) NENMCF is a Level III facility which houses inmates "who require significant security in the form of a secure facility with security fences and armed vehicle patrols, but who are believed to be able to socialize safely with other inmates at their designated facility." (Doc. 35-3 ¶ 4; Doc. 35-4.) On September 23, 2017, Plaintiff participated in a serious riot at NENMCF, after which he was deemed "a threat to the security of the institution, public, other inmate[s], staff or others" and placed in Pre-Hearing Detention. (Doc. 35-7 at 39; *see generally id.* at 27-89.) A few days later, on September 28, 2017, Plaintiff was transferred to the Penitentiary of New Mexico ("PNM"). (Doc. 35–4.) There, he was housed in PNM North, which houses only special management inmates, and placed in the Predatory Behavior Management Program ("PBMP") for treatment of "offenders who have demonstrated the inability to habilitate themselves through programs offered in general population and [who] have engaged in predatory behavior."[3] (Doc. 35-3 ¶¶ 6, 18; Doc. 35-5 at 238.)

### a. Plaintiff's first three free exercise grievances

On December 4, 2017, Plaintiff filed three informal complaints regarding the free exercise of his religion. (Doc. 35-6 at 6, 10, 15.) These complaints were for: 1) Defendants' failure to

---

violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act. (Doc. 19 at 4.) The Court will address the portions of Defendants' Motion pertaining to these claims in a separate PFRD.

[3] During the pendency of this case, Plaintiff was transferred from PNM to the Central New Mexico Correctional Facility. (Doc. 30.) However, his grievances arise out of his time at PNM.

provide a consecrated outdoor space where Plaintiff could practice his faith; 2) the allegedly inaccurate description of the Asatru/Odinist faith in NMCD Policy No. CD-1013101; and, 3) Defendants' failure to find a religious volunteer for Plaintiff, and their policy that pork for the Yule festival and firewood for holy days may only be provided by volunteers. (*Id.*) Plaintiff's informal complaints for each of these matters were returned as unresolved with a recommendation to file a formal grievance. (*Id.* at 6, 10, 15.)

On December 6, 2017, Plaintiff submitted three formal grievances. In the first formal grievance, Plaintiff asserted that his religion required an outdoor space to hold certain rituals, and that "PNM North has no such space." (*Id* at 7.) Plaintiff requested that Defendants create a dedicated outdoor space which could be consecrated. (*Id.*) This grievance was denied because of Plaintiff's status in the PBMP, which limited his religious programming to in-cell only. (*Id.* at 8.)

Plaintiff's second grievance claimed that "[t]he Religious Group Overview in Policy #CD-101300 is not correct for [his] Odinist faith group." (*Id.* at 11.) Plaintiff asserted that the overview incorrectly "mentions 'rune cards,'" and failed to mention a number of holy days and ritual items. (*Id.*) Plaintiff requested that the overview be changed, and that he be allowed to use ritual items made from "natural materials," such as runes "on small pieces of wood, stone, or especially bone," rather than plastic or cardboard. (*Id.*) Plaintiff also requested that Defendants provide a list of approved vendors of Asatru ritual items. (*Id.*) This grievance was summarily denied. (*Id.* at 12.)

Plaintiff's third formal grievance stated that he needed help from the prison chaplain to find a religious volunteer to provide pork for the Yule festival and firewood for holy days. (*Id.* at 16.) Plaintiff requested that either a volunteer be found for him, the chaplain be required to provide the items, or Defendants change the policy that pork and firewood may only be provided by

volunteers. (*Id.*) Plaintiff's grievance was denied because the chaplain had tried to find a religious volunteer for Plaintiff but was unable to do so. (*Id.* at 17.)

Plaintiff appealed the denial of each of his grievances, and on March 15, 2018, Plaintiff's appeals were denied. (*Id.* at 9, 14, 19.) Plaintiff was informed that he had "exhausted [his] administrative remedies."[4] (*Id.*)

b. Plaintiff's fourth free exercise grievance

On July 18, 2018, after he initiated the present action, Plaintiff submitted an informal complaint based on the denial of his request for a religious exemption to the prison grooming policy for special management inmates. (Doc. 1-1; Doc. 35-6 at 20; Doc. 35-5 at 301-06.) In his informal complaint, Plaintiff explained, "[m]y faith group wears beards. It's that simple. I'm not shaving my beard." (Doc. 35-6 at 20.) In the religious exemption request attached to his informal complaint, Plaintiff provided additional information. Plaintiff explained that in his faith, "[t]raditionally a person did not cut his hair or his beard unless he was mourning the death of his father, grandfather or maternal uncle" and it was a "well attested practice to make a vow of dedication to Odin" to "not cut your hair or shave till [sic] the vow was fulfilled . . . upon death." (*Id.* at 22.) Additionally, having "long hair and [a] wild beard" was "seen as emulating our god." (*Id.*) Plaintiff asserted that he had previously worn long hair and a beard, and "only cut [his] hair and [his] beard" because his grandfather died. (*Id.*)

Plaintiff's informal complaint was not resolved, and on September 19, 2018, he submitted a formal inmate grievance because he "wear[s] a beard for religious reasons," and requested that

---

[4] In their motion for summary judgment, Defendants contend that Plaintiff submitted an additional free exercise grievance that was not administratively exhausted. (Doc. 46 at 12.) However, the record shows that this "unexhausted grievance" is a duplicate of a fully exhausted grievance with the incorrect grievance file number. (*Compare* Doc. 35-6 at 4 *with* Doc. 35-6 at 17.)

Defendants "grant [his] exemption to have a beard." (*Id.* at 23.) His formal grievance was denied on October 2, 2018. (*Id.* at 24.) The denial indicated that the religious exemption request "was not granted . . . based on a letter from Austin Harasti, Vice President of the Asatru Community," which stated that "[t]he Asatru Community will not set the standard that you have to have a beard." (*Id.* at 24-25.) Plaintiff appealed the denial, and on October 12, 2018, his appeal was denied, exhausting his administrative remedies. (*Id.* at 26.)

### c.   Plaintiff's grievances for lost items

On December 19, 2018, Plaintiff filed a formal inmate grievance asserting that his sweatshirt, which had been stored in property, was missing. Plaintiff requested that his sweatshirt be replaced.[5] (Doc. 35-6 at 27.) The investigation into Plaintiff's grievance showed that Plaintiff had two sweatshirts upon arrival at PNM North, and both had been given to him. (*Id.* at 31.) Plaintiff's formal grievance was denied on February 6, 2019. (*Id.*) Plaintiff appealed the denial, and on February 14, 2019, Plaintiff's appeal was denied, exhausting his administrative remedies regarding the missing sweatshirt. (*Id.* at 32.)

On March 19, 2019, Plaintiff filed an informal complaint stating that "property misplaced some of [his] stuff," including earbud headphones. (*Id.* at 33.) On April 11, 2019, Plaintiff filed a formal inmate grievance asserting that he was "missing a whole box" of his property, including ear buds, drawing boards, drawings, reference materials, batteries, an English-to-Icelandic dictionary, two drawing instruction texts, and a jar of coffee. (*Id.* at 36.) Plaintiff requested that his lost items be replaced, "or better yet just locate[d]." (*Id.*) On May 13, 2019, Plaintiff's formal

---

[5] The record does not contain an informal complaint on this matter; however, Plaintiff asserts that he filed the formal grievance after his informal complaint "was not answered." (*See* Doc. 35-6 at 27.)

grievance was returned to him as untimely, and the record does not show that Plaintiff took any additional steps regarding the missing property. (*Id.*)

On April 5, 2018, Plaintiff filed a *pro se* prisoner Complaint in the First Judicial District Court against a myriad of defendants alleging both state and federal claims. (Doc. 1-1.) The case was removed to this Court on June 6, 2018 (Doc. 1), and on June 13, 2018, Plaintiff filed a Motion seeking to have the case remanded to state court on the grounds that he intended to proceed in state court and his complaint primarily raised state constitutional claims. (Doc. 4.) Plaintiff also filed a Motion for Leave to File First Amended Complaint on July 25, 2018 in which he stated that "this action having been moved into Federal Court as a 42 U.S.C. § 1983, I need to modify the complaint to raise all relevant federal claims and to rephrase any argument accordingly." (Doc. 11.) Plaintiff attached a proposed first amended complaint to his motion and verified under penalty of perjury that the information contained in the proposed first amended complaint "is true and correct." (*Id.* at 3-10.) On March 4, 2019, the Court granted Plaintiff leave to amend, and gave him 30 days in which to file an amended complaint. (Doc. 18.) In that Order, the Court informed Plaintiff that he is "'the master of [his] claims'" and that his amended complaint "need not be the same version attached to the motion to amend." (*Id.* at 1-2.) Thereafter, on April 2, 2019, Plaintiff filed his verified 1st Amended Complaint Prisoner Civil Rights Complaint ("Amended Complaint"). (Doc. 19.) In his Amended Complaint, Plaintiff modified his claims and the parties to this action. Specifically, he names German Franco, "Director of Prisons" for the New Mexico Corrections Department ("NMCD"), John Gay, "Warden of P.N.M. North," and Jane/John Doe, the "Secretary of Adult Corrections,"[6] as the only Defendants to this action and asserts violations of the First and

---

[6] Plaintiff also refers to this Doe Defendant as the "Secretary of Adult Prisons." (Doc. 19 at 3.)

Fourteenth Amendments under 42 U.S.C. § 1983 as well as violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* against these Defendants.

In Count I of the Amended Complaint, Plaintiff claims that "the current policy of the NMCD created by the Secretary of Corrections does not allow" him to practice his faith "in a reasonable fashion" or "any meaningful way" in violation of the First Amendment and RLUIPA. (Doc. 19 at 3-4.) Specifically, Plaintiff claims that the "policy gives an 'overview' of [his] faith, Asatru (also called Odinism, or Heathenry), which is erroneous, doesn't allow for basic ritual items, the growing of a beard, specific [holy] days, or ritual practices, all without security rationale." (*Id.* at 4.) Plaintiff also claims that Defendants have not approved a vendor for Asatru ritual items, despite the fact that there are vendors who sell such items. (*Id.*) Finally, Plaintiff claims that "Pagan groups in the NMCD are regularly treated differently than Christian groups."[7] (*Id.*)

In Count II of his Amended Complaint, Plaintiff claims that Defendants' policies violate his First Amendment right to access information. (*Id.*) Plaintiff specifically alleges as follows:

1) I am arbitrarily denied the ability to purchase a vast number of books without security rationale. I can only buy the titles found in "Books n' things" or "Bargain books." If the title isn't in their catalogue, I can't purchase it.
2) The NMCD will not allow my family or friends to order me books from [vendors] and have those books sent from the [vendor] to the facility. There is no security rationale for this policy. They claim it is because people had [inappropriate] books sent in, but there is already a method[] of disposition for [unauthorized] property/mail.
3) The NMCD arbitrarily deny certain [vendors] without any logical reason. Some facilities will not allow books ordered from Amazon.com, while some will only allow orders from Amazon. It doesn't make sense.

---

[7] This third allegation in Count I, which the Court addresses in this PFRD, is referred to herein as Plaintiff's "religious discrimination" claims.

4) NMCD does not allow many magazines because they depict <u>non</u> nude women. Ie: "American Curves," "Show," "Maxim," etc. These do <u>not</u> show nudity.

5) NMCD does not allow art books or artwork that does depict nudity for non-[prurient] reasons. Nude figures etc. I had several artbooks taken. Like Frank Cho's "Drawing Beautiful Women" and "The Nude Figure: A Reference." Neither [shows] nudity for prurient reasons, or could be considered pornographic. Its [sic] art for art sake, in the tradition of fine art. I also had several of my own drawings taken under NMCD policy because they were figure studies of nude women. There is no security rationale to support the practice. Its [sic] artwork. Non-[prurient], non pornographic, tasteful drawings.

(*Id.* at 4 (emphases in original).)

Finally, Plaintiff raises a Fourteenth Amendment due process claim in Count III of his Amended Complaint and specifically alleges as follows:

NMCD policy does not give basic due process when it takes property from a prisoner. I had a lot of property taken without justification. I wanted to challenge the confiscation, but policy doesn't allow any meaningful challenge. The grievance policy gives 105 days total to complete the process. But confiscated property is disposed of immediately without waiting for the completion of the grievance process. Without being able to challenge the confiscation, there is no due process.

(*Id.* at 5.)

The Court ordered the named Defendants to answer Plaintiff's Amended Complaint on May 4, 2020. (Doc. 20.) On July 20, 2020, Defendants Franco and Gay filed their Answer. (Doc. 26). Thereafter, on August 6, 2020, the Court ordered these Defendants to "investigate the incident or incidents underlying [P]laintiff's claims" and file a *Martinez* Report[8] of their investigation, "to assist the Court in evaluating the merits of Plaintiff's claims." (Doc. 27 at 2.) The Court also specifically informed the parties that it "may use the *Martinez* Report in deciding whether to grant summary judgment for or against any party, whether by motion or *sua sponte*" and as such urged "all parties (including Plaintiff in his response or objections to the *Martinez* Report)" "to submit

---

[8] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

8

whatever proof or other materials they consider relevant to Plaintiff's claims and Defendants' defenses in the pleadings they file pursuant to this Order." (*Id.* at 5-6.) Defendants Franco and Gay filed the *Martinez* Report on November 26, 2020. (Docs. 27, 35.) Plaintiff was granted an extension until April 5, 2021 to respond to the *Martinez* Report. (Doc. 37). Plaintiff neither responded by the deadline, nor moved for another extension of time to respond or otherwise object. The Court also set a deadline for the parties to file dispositive motions based on the *Martinez* Report. (Docs. 38, 45.) On May 7, 2021, Defendants Gay and Franco moved for summary judgment on all of Plaintiff's claims based on the *Martinez* Report. (Doc. 46.) Plaintiff filed no dispositive motions, and he chose not to respond in opposition to Defendants' motion for summary judgment. (Doc. 47, 48.) Plaintiff is indigent and has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. (Doc. 6; Doc. 6-1 at 7-10; Doc. 20; Doc. 49.)

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If this burden is met, the non-moving party must designate specific facts showing a genuine issue for trial. *See Celotex Corp*., 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law

it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

For purposes of summary judgment, a prisoner's complaint is treated as evidence if it alleges specific facts based on the prisoner's personal knowledge and has been subscribed under penalty of perjury. 28 U.S.C. § 1746; *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Id.* at 1110. However, "it is not the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

When reviewing a motion for summary judgment, the Court must keep in mind three principles. First, the Court's role is not to weigh the evidence and determine the truth of the matter, but to assess the threshold issue of whether a genuine issue of material fact exists. *Anderson*, 477 U.S. at 249. Second, the Court must draw all reasonable inferences in favor of the non-moving party and construe all evidence in the light most favorable to that party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). Finally, the Court cannot decide issues of credibility. *Anderson*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

Here, Plaintiff did not respond to Defendants' *Martinez* Report or their motion for summary judgment. Failing to file a response "is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that

judgment for the moving party is 'appropriate' under Rule 56." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). However, by not filing a response, "the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion." *Id.*

## III. ANALYSIS

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement under the PLRA "seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citations, quotations, and brackets omitted). Thus, the PLRA requires "proper exhaustion" whereby a prisoner complies with the appliocable "deadlines and other procedural rules" as a precondition to bringing suit in federal court "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. An inmate must exhaust all available administrative remedies even if those remedies "appear to be futile at providing the kind of remedy sought," or the inmate's claims must be dismissed. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016); *McMiller v. Jones*, 590 F. App'x 749, 750–51 (10th Cir. 2014).

Failure to exhaust is an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), and Defendants "bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). If Defendants

11

make the required showing, then Plaintiff would have to "show that remedies were unavailable to him" for his claims to survive. *Id.*

The NMCD grievance procedure consists of three steps. First, an inmate must file an Inmate Informal Complaint within five working days of the incident giving rise to the complaint. (Doc. 35-5 at 71, 95.) Second, if the inmate is dissatisfied with the resolution of the informal complaint, the inmate may file a formal Inmate Grievance within five working days after receiving a response to the complaint, or after ten working days have elapsed without a response. (*Id.* at 71, 95-96.) The Warden or his or her designee must review and make a decision on the grievance within 15 working days of receipt. (*Id.* at 74, 98.) Third, if an inmate is dissatisfied with the Warden's decision, the inmate may appeal it to the Office of the Secretary of Corrections within five working days of receipt of the Warden's decision. (*Id.* at 75, 99.) Only after completing all three steps has an inmate exhausted the NMCD's administrative remedies.

In Count I of his Amended Complaint, Plaintiff alleges that the current policy of the NMCD does not allow him to practice his faith. (Doc. 19 at 4.) More particularly, Plaintiff alleges that the overview of the Asatru/Odinism religion included in NMCD's Religious Programs Policy CD-101300 is "erroneous," and does not "allow for basic ritual items, the growing of a beard, specific [holy] days, or ritual practices." (Doc. 19 at 4.) Additionally, Plaintiff claims that Defendants failed to provide an approved vendor for Asatru religious items and that "Pagan groups in NMCD are regularly treated differently than Christian groups." (*Id.*)

As to Plaintiff's allegation that the policy overview is incorrect, Defendants have conceded, for the purposes of their summary judgment motion, that this claim is administratively exhausted, (*see* Doc. 46 at 12), and the Court agrees that Plaintiff fully exhausted this claim with his grievance challenging "[t]he Religious Group overview in Policy #CD-101300" as incorrect. (Doc. 35-6 at

11.) Likewise, as to Plaintiff's allegation that Defendants did not provide an approved vendor for Asatru religious items, Plaintiff, in a fully exhausted grievance, requested that the prison "[h]ave a list of approved [vendors]." (*Id.*) This request "provide[d] prison officials with enough information to investigate and address the inmate's complaint internally," and therefore was sufficient to exhaust this claim. *Rachel v. Troutt*, 764 F. App'x 778, 783 (10th Cir. 2019) (citations and quotations omitted).

However, as to Plaintiff's claim that Pagan groups are treated differently than Christian groups, Plaintiff failed to exhaust administrative remedies. The record shows no grievance by Plaintiff asserting that he was treated differently than Christian inmates by any prison personnel or prison policy, or that Plaintiff was facing discrimination that Christian inmates were not. Although an inmate can be excused from exhaustion if prison officials prevent him from accessing the prison administrative process,[9] Plaintiff does not allege that he was in any way impeded from filing informal complaints, formal grievances, or grievance appeals. Because Plaintiff's RLUIPA and First Amendment religious discrimination claims in Count I are unexhausted, they should be dismissed without prejudice. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (emphasis in original)).

The Court notes that Plaintiff has **not** asserted claims in his Amended Complaint based on some of the religious issues that he raised in fully exhausted grievances and that Defendants have addressed in their Motion.[10] As such, these religious issues are not properly before the Court. For

---

[9] *See Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011).

[10] Logically, if Plaintiff had intended to pursue claims based on these religious issues, he would have included them in Count I of his Amended Complaint, which alleges "Violation[s] of [F]irst [A]mendment and RLUIPA," rather than Count II, which alleges "Violation[s] of First Amendment" based on access to information, or Count III, which alleges

instance, Plaintiff fully exhausted a grievance in which he contended that the prison chaplain had failed to find a religious volunteer for his faith and challenged the NMCD's policy that pork for Yule and firewood for holy days may only be provided by volunteers. (Doc. 35-6 at 15–19.) Plaintiff asserted claims based on these issues in his original Complaint but abandoned them when he chose not to bring them in his Amended Complaint. (*Compare* Doc. 1-1 at 3 *with* Doc. 19 at 4.) Similarly, Plaintiff made a claim in his original Complaint based on his fully exhausted grievance regarding Defendants' denial of access to an outdoor space for religious rituals at PNM, but abandoned that claim when he did not bring it in his Amended Complaint. (*Id.*)

Finally, although not raised in his original Complaint, Plaintiff sought leave to file a proposed amended complaint that included claims concerning his fully exhausted grievance that he was denied a religious beard exception to the grooming policy for inmates in special management in violation of the First Amendment and RLUIPA.[11] (*Compare* Doc. 11 at 1, 5 *with* Doc. 19 at 4.) However, after the Court granted him leave to amend, he chose to file a different Amended Complaint that excluded these claims. Specifically, while the operative Amended Complaint alleges the NMCD's "Overview" of Odinism is erroneous because, *inter alia*, it does not allow for the growing of a beard, conspicuously absent is any assertion of First Amendment or

---

"14th Amendment due process" violations. (Doc. 19 at 2, 4-5.) As such, the Court addresses Plaintiff's failure to pursue claims based on these issues in its discussion of Count I. However, the Court has carefully reviewed the entire Amended Complaint and nowhere does it include claims based on the fully exhausted but abandoned religious issues the Court identifies in this PFRD.

[11] In his inmate informal complaint on this issue, Plaintiff referenced Defendants' denial of his request for "a religious hair/beard exemption," and attached a religious exemption request discussing both beards and "long hair." (Doc. 35-6 at 20-22.) Likewise, in his proposed amended complaint, Plaintiff alleged that he was not allowed to grow a beard or "long hair." (Doc. 11 at 5.) However, in his formal grievance, Plaintiff referred solely to Defendants' denial of his request for "a beard exemption," and made no mention of long hair. (*Id.* at 23.) Nor did Plaintiff mention long hair anywhere in his operative Amended Complaint. (*See generally* Doc. 19.) Thus, Plaintiff failed to fully exhaust his administrative remedies with respect to any claims based on Defendants' refusal to allow him to grow long hair and has also abandoned any such claims. *Jernigan*, 304 F.3d at 1032 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under [the] PLRA for failure to exhaust his administrative remedies. . . . [T]he doctrine of substantial compliance does not apply.")

RLUIPA violations premised on the denial of his request for a religious beard exception to the grooming policy prohibiting beards in the PBMP. (*Id.*; *see also* Doc. 35-6 at 20–26.)  As such, Plaintiff has also abandoned any claim for relief as to his July 2018 grievance that he administratively exhausted by October 2018, based on Defendants' denial of the requested beard exception. (Doc. 35-6 at 20-26.)

As the Court advised Plaintiff before he filed his Amended Complaint, he is the master of his claims, and he decides which claims he would like to assert. (Doc. 18.) Because "[a]n amended complaint supersedes the original complaint and renders the original complaint of no legal effect,"[12] the Court should not and will not consider claims raised in the original Complaint or proposed amended complaint but not in the operative Amended Complaint, where Plaintiff has demonstrated his ability to competently and explicitly assert those claims in prior pleadings. (*Compare* Doc. 1-1, Doc. 11, *and* Doc. 19.) For all of these reasons, the Court recommends that the portions of Defendants' Motion seeking summary judgment on Plaintiff's exhausted but abandoned free exercise claims be denied as moot.

Regarding Plaintiff's allegations in Count II that Defendants violated his First Amendment right to access information, the record is clear that Plaintiff failed to exhaust administrative remedies as to each of the claims asserted. (Doc. 19 at 4.) Initially, in this Count Plaintiff complains that Defendants: 1) "arbitrarily denied [Plaintiff] the ability to purchase a vast number of books" by only allowing books sold by two approved vendors; 2) prohibited his friends and family from ordering books from other vendors and having them delivered to him at the prison; 3) prohibited

---

[12] *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (looking to "plaintiff's amended complaint filed pursuant to Rule 15(a) because the amended complaint supersedes the original")); *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990).

certain magazines that "depict *non* nude women," "i.e. 'American Curves,' 'Show,' 'Maxim,' etc."; and, 4) prohibited art books and artwork depicting "nudity for non-prurient reasons." (Doc. 19 at 4 (emphasis in original).)  The Court has meticulously reviewed the record and finds that it includes no grievances challenging Defendants' book vendor policies or policies regarding materials depicting women, nude or otherwise. Plaintiff's challenges to these policies must thus be dismissed without prejudice as unexhausted. *See Gallagher*, 587 F.3d at 1068.

Plaintiff also alleges in Count II that he has had "several artbooks taken" and several of his drawings were "taken under NMCD policy because they were figure studies of nude women." (Doc. 19 at 4.) To the extent these allegations may be understood to assert claims challenging the alleged confiscations under the First Amendment, these claims must also be dismissed as unexhausted. While Plaintiff did submit a formal grievance stating that, along with other items, some of his art items were missing, (Doc. 35-6 at 36), he did not allege that any of these items were confiscated or otherwise taken by NMCD personnel, and therefore his grievance could not have allowed Defendants to administratively resolve Plaintiff's claims regarding the alleged confiscation of depictions of nude women. Moreover, Plaintiff's formal grievance for his lost art items was returned to him as untimely. Exhaustion under the PLRA "requires compliance with all of the prison's grievance procedures, including 'deadlines and other critical procedural rules.'" *Hardeman v. Smith*, 764 F. App'x 658, 660 (10th Cir. 2019) (quoting *Woodford*, 548 U.S. at 90).

Relatedly, in Count III of his Amended Complaint, Plaintiff alleges that the "NMCD policy does not give basic due process when it takes property from a prisoner" because "confiscated property is disposed of immediately without waiting for the completion of the grievance process." (Doc. 19 at 5.) However, the record includes no administrative grievance in which Plaintiff challenges the NMCD's confiscation or contraband destruction policies. It does include one fully

exhausted grievance relating to personal property. (*See* Doc. 35-6 at 27–32.) But that grievance concerns a lost sweatshirt; it does not refer to any confiscated items, NMCD's confiscation policy, or the destruction of inmate property. Thus, it cannot serve to exhaust the claims Plaintiff raised in Counts II and III of his Amended Complaint regarding confiscated property.

Perhaps attempting to excuse his failure to exhaust claims in both Counts II and III relating to confiscated property, Plaintiff has asserted that he "wanted to challenge the confiscation" of "a lot of property taken without justification" "but policy [does not] allow any meaningful challenge" because "confiscated property is disposed of immediately without waiting for the completion of the grievance process." (Doc. 19 at 5.) However, the record demonstrates that the NMCD has an emergency grievance process through which an inmate's grievance concerning confiscated property could be fully adjudicated before the property is destroyed. (Doc. 35 at 26–28; Doc. 35-5 at 39-39, 69, 93, 39.) Moreover, Plaintiff did not avail himself of either the standard or the emergency grievance process, and even if he believed it would be futile, he was still required to exhaust available administrative remedies. *See Jernigan,* 304 F.3d at 1032 (to satisfy PLRA, inmate must exhaust all available administrative remedies even if those remedies "appear to be futile at providing the kind of remedy sought"). In short, having failed to exhaust administrative remedies on his claims in Counts II and III, the Court should dismiss those claims without prejudice. *See Gallagher*, 587 F.3d at 1068.

In his verified Amended Complaint, Plaintiff attests without more that "[a]ll issues [were] fully grieved and appealed." (Doc. 19 at 5.) However, he also admits under oath that he did not challenge the confiscation of his property, and thereby concedes in the same pleading that he failed to administratively exhaust issues raised therein. (*Id.*) In any event, Defendants have presented evidence demonstrating the absence of a genuine issue of material fact on their affirmative defense

that Plaintiff failed to exhaust administrative remedies as to his religious discrimination claims in Count I and his claims in Counts II and III in their entirety. (Docs. 35-2, 35-6, 46.) Defendants having met their initial summary judgment burden, the burden shifted to Plaintiff as the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)*; Celotex Corp*., 477 U.S. at 324; *Anderson*, 477 U.S. at 256; *Vitkus,* 11 F.3d at 1539. Plaintiff has not met this burden. Despite being given the opportunity to respond to both the *Martinez* Report and Defendants' Motion, Plaintiff chose not to do either. He has therefore failed to controvert the evidence of record concerning those matters he grieved, and those he did not. Moreover, Plaintiff has presented no evidence that administrative remedies were unavailable to him as to those claims he failed to exhaust. Finally, there is no evidence here that defects in exhaustion were "procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). In these circumstances, Plaintiff's conclusory statement in his Amended Complaint does not create a bona fide factual dispute that would preclude summary judgment on Counts II, III, and the religious discrimination claims in Count I for failure to exhaust administrative remedies.

Of the three remaining Defendants in this case, only two have been served – Defendants Gay and Franco. The Court did not direct service on the John/Jane Doe Defendant, and this Defendant has thus not responded to the Amended Complaint. Plaintiff is an inmate proceeding *in forma pauperis.* As such, the action is subject to 28 U.S.C. § 1915 and 42 U.S.C. § 1997e.  Both of these provisions require the Court to dismiss an action *sua sponte* if the Court determines that it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."); 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion .

. . dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted."). As discussed above, Defendants have met their burden of proving that Plaintiff failed to exhaust administrative remedies for his religious discrimination claims in Count I, and for Counts II and III in their entirety. These claims against the unserved John/Jane Doe Defendant are thus also subject to dismissal under the PLRA for failure to exhaust administrative remedies. *See Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545, at *13 (W.D. Okla. Jan. 31, 2008), *aff'd*, 301 F. App'x 832 (10th Cir. 2008) (dismissing prisoner's claims against unserved defendants where "the fully developed record" showed that all of the prisoner's claims not barred by the statute of limitations were "subject to dismissal under the PLRA" for "failure to exhaust administrative remedies"). The Court therefore recommends that these claims be dismissed against the unserved Defendant as well.

## IV.  CONCLUSION

For the reasons stated above, the Court recommends Defendants' Motion for Summary based on the *Martinez* Report (Doc. 46) be GRANTED IN PART and DENIED AS MOOT IN PART as follows:

1) As to the First Amendment and RLUIPA religious discrimination claims raised in Count I of Plaintiff's Amended Complaint, the Court recommends that summary judgment in favor of Defendants be GRANTED and that Plaintiff's religious discrimination claims against all Defendants be dismissed without prejudice.

2) As to the First Amendment access to information claims raised in Count II of Plaintiff's Amended Complaint, the Court recommends that summary judgment in favor of Defendants

be GRANTED and that all claims in Count II against all Defendants be dismissed without prejudice.

3) As to the Fourteenth Amendment Due Process claims raised in Count III of Plaintiff's Amended Complaint, the Court recommends that summary judgment in favor of Defendants be GRANTED and that all claims in Count III against all Defendants be dismissed without prejudice.

4) The Court recommends that the portions of Defendants' Motion seeking summary judgment on the following exhausted but unasserted claims be DENIED AS MOOT because Plaintiff has abandoned these claims by failing to assert them in the operative Amended Complaint: (1) Defendants' failure to find a religious volunteer for Plaintiff, and their policy that pork for the Yule festival and firewood for holy days may only be provided by volunteers; (2) Defendants' failure to provide a consecrated outdoor space at PNM for Plaintiff to practice his faith and rituals; and, (3) Defendants' failure to grant him a beard exception to the grooming policy for special management inmates.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE